1

2

3

4

5

6

7

8
                 UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON

9
                      AT TACOMA

10

11
ZURICH AMERICAN INSURANCE
COMPANY,

12
                Plaintiff,

13
      v.

14
CERTAIN UNDERWRITERS AT
LLOYD'S LONDON,

15

16
               Defendant.

CASE NO. C12-5749 RJB

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

17
     This matter comes before the Court on Defendant Certain Underwriters at Lloyd's

18
London (Underwriters) Motion for Summary Judgment.  Dkt. 10.  The Court has considered the

19
pleadings in support of and in opposition to the motion and the record herein.[1]

20

21

22
     [1]Plaintiff Zurich American Insurance Company moves to strike the Declaration of

23
Stephen M. Todd.  Dkt. 16 pp. 20-25.  The Court has reviewed the declaration.  It amounts to no
more than another lawyer's legal opinions and does not aid the Court in the resolution of the

24
issues.  The Declaration has not been considered in the resolution of this matter.

**INTRODUCTION AND BACKGROUND**

This is an insurance contribution action brought by Plaintiff Zurich American Insurance Company (Zurich) seeking recovery against Underwriters for amounts that Zurich paid to defend and indemnify its named insured Stan Palmer Construction (Palmer Construction) for bodily injury claims by an employee of a subcontractor.

Zurich's complaint asserts that Zurich insured Palmer Construction as the general contractor on a bridge construction project in Tacoma, Washington.  Palmer Construction contracted with A.R.M. Construction, which, in turn, contracted with a second-tier subcontractor known as K&L Rebar to replace the East L Street Bridge.  Dkt. 1-2 p. 3.  Jack Wooldridge, An employee of K&L Rebar, fell and suffered bodily injury while employed on the project.  *Id.*

The contract between Palmer Construction and A.R.M. Construction provided that A.R.M., as a subcontractor, would maintain an additional insured endorsement naming Palmer Construction as an "additional insured."  Dkt. 1-2 p. 4.  The complaint states that the additional insured endorsement extends coverage to an additional insured (Palmer Construction) for its liability "arising out of" the work of the named insured (A.R.M.).  Actual negligence of the named insured is not a pre-requisite to coverage for the additional insured.  *Id.*

Underwriter's issued a Commercial General Liability policy of insurance to A.R.M. Construction and Allen Mettler d/b/a A.R.M.  The additional insured endorsement in this policy extends coverage to parties qualifying as additional insureds, but only to the extent that the claims against the additional insured arise out of alleged or actual negligent acts or omission of the named insured.  Dkt. 11-1 p. 21.  Specifically, the policy provides as follows:

> 4.  ADDITIONAL ASSURED:  It is understood and agreed that wherever the "Assured" has contracted or agreed to protect any individual, firm, corporation or governmental entity shall be deemed an Additional Assured under this insurance, subject to the following:

(a) the liability of the Insurer(s) as respects such Additional Assured shall be limited to the amount of insurance contracted or agreed to be carried by the "Assured" and in no event shall such liability in the aggregate exceed the Insurer(s)' limits of liability expressed in ITEM IV. Of the DECLARATION PAGE; and

(b) the **coverage afforded such Additional Assured** shall be subject to the terms, conditions and exclusions of this insurance, and **shall also be restricted to defense of and liability for "bodily injury" and "property damage" claims arising out of alleged or actual negligent acts or omission of the "Assured**," and

(c) the coverage afforded such Additional Assured applies solely to ongoing operations of the "Assured" and excludes liability arising out of the "products hazard" and "completed operations hazard."

Dkt. 11-1 p. 21 (emphasis added). The Assured is defined as A.R.M. Construction, and Palmer Construction is an Additional Assured.[2] *Id.*

According to Zurich's complaint, Wooldridge filed the underlying suit against Palmer Construction and later filed an amended complaint adding A.R.M. Construction as an additional defendant. Dkt. 1-2 p. 5. The amended complaint alleges that A.R.M. Construction subcontracted portions of the work to be performed to Plaintiff's employer, K&L Rebar. Addressing both Defendants the amended complaint alleges "Mr. Wooldridge's fall was solely and proximately due to the Defendants' breach of their statutory, common law and contractual duties of care to Plaintiff in failing to provide adequate fall protection." *Id.* A second amended complaint was filed adding Allen R. Mettler, d/b/a A.R.M. Construction as a defendant. *Id.*

A.R.M. Construction tendered the lawsuit to its insurer Underwriters seeking defense and indemnity as the named insured on the Underwriters policy. Underwriters accepted the tender under a reservation of rights and assigned defense counsel to defend A.R.M. Dkt. 11-2.

---

[2] Apparently the parties use "Insured" and "Assured" interchangeably.

1       Palmer Construction also tendered the lawsuit to Underwriters seeking defense and

2  indemnity as an additional insured on the Underwriters policy.  Underwriters accepted the tender

3  under a reservation of rights stating:

> It appears that Palmer Construction qualifies as an additional insured under ARM Construction's insurance policy with Underwriters. However, coverage for Stan Palmer Construction as an additional insured is limited to defense of and liability for bodily injury arising out of alleged or actual negligent acts or omissions of ARM Construction. There is no coverage under the Underwriters policy for any separate negligence Stan Palmer Construction may have in the above matter. Therefore, Underwriters denies coverage to Stan Palmer Construction for its separate negligence in the above matter.

8  Dkt. 11-3 p. 5.  Underwriters retained defense counsel to represent Palmer Construction.  *Id.* at p.

9  7.

10       In May of 2011, Wooldridge entered into a settlement with A.R.M. and Allen Mettler.

11  Underwriters paid $100,000 to Jack Wooldridge, in exchange for a release of Allen Mettler and

12  A.R.M. only.  Neither Palmer Construction nor Zurich was a party to the settlement.  Dkt. 1-2 p.

13  6; Dkt. 12-1.  The parties to the Release and Settlement (Wooldridge, A.R.M Construction,

14  Mettler, and Underwriters) "expressly stipulated that there is no liability on the part of defendant

15  A.R.M. Construction.  It is further stipulated that plaintiff has insufficient evidence to establish a

16  prima facie case of liability against A.R.M. Construction, and any and all claims against A.R.M.

17  Construction would be dismissed pursuant to a motion for summary judgment."  Dkt. 12-1 p. 17.

18       Concerning Palmer Construction, the Release and Settlement states:

> … It is further stipulated that neither A.R.M. Construction nor Allen Mettler committed any act or omission giving rise to any vicarious liability on the part of Stan Palmer Construction for any of Plaintiffs alleged injuries or damages.
>
>     This Release and Settlement Agreement does not release any claims or actions that Jack Wooldridge has against Stan Palmer Construction, Inc. individually for its sole negligence.  Should it be determined in the underlying action that Stan Palmer Construction, Inc. is found to be liable based upon any allocation of fault arising from any act or omission of A.R.M. Construction, plaintiff will not execute or attempt to collect against any judgment or settlement based upon said allocation of fault.  As a

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

result, any remaining claims by plaintiff in the underlying action shall be based upon the sole negligence of Stan Palmer Construction and no claims of joint and several liability between A.R.M. Construction and Stan Palmer Construction shall be asserted by plaintiff in the underlying action.

Dkt. 12-1 p. 18.

Palmer Construction was notified by letter, dated May 19, 2011, that any and all liabilities on the part of A.R.M. Construction had settled and that Underwriters had no further obligation to defend or indemnify Palmer Construction.  Dkt. 12-1 p. 23.  As an explanation, the letter states:

> At this time you are respectfully advised that any and all claims raised against Underwriters' named insured, ARM Construction have been resolved. A copy of the release executed between Plaintiff and ARM Construction is enclosed.

> Pursuant to the express language set forth in this release, any and all liabilities on the part of ARM Construction have been extinguished. Moreover, there is an express admission contained within the release stating that there is no liability for any of the injuries or losses claimed by Plaintiff associated with any act or omission arising out of ARM Construction's acts or omissions. In fact, the agreement goes on to state Plaintiffs will not seek any recovery in the underlying action based upon any potential allegations attributable to ARM Construction.

> As a result, and as set forth in the release, the only potential claims for liability raised by Plaintiffs at this time involve the sole negligence of Zurich's insured, SPCI [Palmer Construction].

> Based upon this express release, it is clear that your insured will not be exposed to any claims arising out of any act or omission on the part of ARM Construction. Given the expressed terms of this Release, Underwriters believes it has no further obligation to provide any defense or indemnity to SPCI [Palmer Construction].

> Consequently, it is requested that Zurich immediately accept the full defense and indemnification of its insured in regard to the underlying lawsuit. Underwriters will instruct assigned counsel for SPCI [Palmer Construction] that Underwriters will no longer be responsible for any further defense costs or expenses associated with the defense of SPCI [Palmer Construction] effective May 31, 2011.

Dkt. 12-1 p. 23.

1   The complaint in the underlying action was never further amended to reflect A.R.M.'s

2   settlement with Wooldridge or any changes to the claims made in the previous complaints.

3   Zurich took up the defense of Palmer Construction and ultimately settled Wooldridge's

4   claim for $350,000.  Zurich also paid $40,994.41 in defense costs.  Dkt. 1-2 p. 6.  Palmer

5   Construction assigned all rights against Underwriters to Zurich.  Dkt. 1-2 p. 11.

6   Zurich alleges as causes of action against Underwriters (1) breach of contract for

7   termination of the defense of Palmer Construction, (2) equitable subrogation because the claims

8   against Palmer Construction arose out of A.R.M.'s alleged or actual negligent acts or omissions,

9   and/or A.R.M's work and operations for Palmer Construction, (3) equitable contribution on the

10  same basis as the subrogation claim.  Dkt. 1-2 pp. 6-11.

11  Underwriters brought the instant motion for summary judgment asserting that it fulfilled

12  all its obligations to the additional insured Palmer Construction.

13                      **SUMMARY JUDGMENT STANDARDS**

14  Summary judgment is appropriate only when the pleadings, depositions, answers to

15  interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories,

16  and other materials in the record show that "there is no genuine issue as to any material fact and

17  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a

18  motion for summary judgment, the evidence, together with all inferences that can reasonably be

19  drawn therefrom, must be read in the light most favorable to the party opposing the motion.

20  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of*

21  *Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

22  The moving party bears the initial burden of informing the court of the basis for its

23  motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex*

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 6

1   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of

2   proof, the moving party must make a showing that is sufficient for the court to hold that no

3   reasonable trier of fact could find other than for the moving party.  *Idema v. Dreamworks, Inc.*,

4   162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

5          To successfully rebut a motion for summary judgment, the non-moving party must point

6   to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

7   *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact that might

8   affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477

9   U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

10  summary judgment is not appropriate.  *See v. Durang,* 711 F.2d 141, 143 (9th Cir. 1983).  A

11  dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

12  jury could return a verdict for the nonmoving party."  *Anderson,* at 248.  The mere existence of a

13  scintilla of evidence in support of the party's position is insufficient to establish a genuine

14  dispute; there must be evidence on which a jury could reasonably find for the party.  *Id.*, at 252.

15         The issues presented are governed by Washington State law.  See *Insurance Co. N.*

16  *Am. v. Federal Express Corp.*, 189 F.3d 914, 919 (9th Cir. 1999).  Washington State law is clear

17  that the interpretation of policy language contained in an insurance contract is a question of law.

18  *Butzberger v. Foster*, 151 Wn.2d 396, 401 (2004); *State Farm General Ins. Co. v. Emerson*, 102

19  Wn.2d 477, 480 (1984).  Where there are no material facts in dispute, interpretation of the

20  insuring language at issue is appropriately decided on summary judgment.  See *American*

21  *Bankers Ins. v. N.W. Nat. Ins*., 198 F.3d 1332 (11th Cir. 1999).

22

23

24

# WASHINGTON INSURANCE LAW

The criteria for interpreting insurance policies in Washington are well settled. Courts construe insurance policies as contracts. *Weyerhaeuser Co. v. Commercial Union Ins. Co*., 142 Wn.2d 654, 665-66 (2000). Courts consider the policy as a whole and give it a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. *Id*. If the policy language is clear and unambiguous, courts must enforce it as written and may not modify it or create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co*., 154 Wn.2d 165, 171 (2005). A clause is only considered ambiguous if it is susceptible to two or more reasonable interpretations. *Id*. If an ambiguity exists, the clause is construed in favor of the insured. *Id*.

Washington courts have long held that the duty to defend under an insurance contract is different from and broader than the duty to indemnify. *Am. Best Food, Inc. v. Alea London, Ltd*., 168 Wn.2d 398, 404 (2010). The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage. *Truck Ins. Exch. v. VanPort Homes, Inc*., 147 Wn.2d 751, 759 (2002). When the facts or the law affecting coverage are disputed, the insurer may defend under a reservation of rights until coverage is settled in a declaratory action. *Am. Best Food*, at 404. An insurer must defend until it is clear that the claim is not covered. *Nat'l Sur. Corp. v. Immunex Corp*., 162 Wn.App. 762, 774 (2011). The duty to indemnify, by contrast, exists only if the policy actually covers the insured's liability. *Am. Best Food*, at 405.

1    **INSURANCE DISPUTE AND ISSUES OF FACT AND LAW**

2           Underwriters seeks a summary judgment ruling that it's duty to defend Palmer

3    Construction ended when its insured A.R.M. entered into a settlement with the underlying

4    plaintiff Wooldridge.

5           The Washington Supreme Court recently summarized an insurer's duty to defend as

6    follows:

7           The duty to defend is triggered if the insurance policy conceivably covers allegations in
            the complaint. The duty to defend arises when a complaint against the insured, construed
8           liberally, alleges facts which could, if proven, impose liability upon the insured within the
            policy's coverage. An insurer may not put its own interests ahead of its insured's. To that
9           end, it must defend until it is clear that the claim is not covered....

10          The insurer is entitled to investigate the facts and dispute the insured's interpretation of
            the law, but if there is any reasonable interpretation of the facts or the law that could
11          result in coverage, the insurer must defend. When the facts or the law affecting coverage
            is disputed, the insurer may defend under a reservation of rights until coverage is settled
12          in a declaratory action. Once the duty to defend attaches, insurers may not desert
            policyholders and allow them to incur substantial legal costs while waiting for an
13          indemnity determination.

14   *Am. Best Food, Inc. v. Alea London, Ltd*., 168 Wn.2d 398, 404-05 (2010).

15          Underwriters does not dispute that the claims in Wooldridge's underlying complaint

16   triggered the duty to defend the additional insured, Palmer Construction, or that the complaint

17   was not amended after A.R.M.'s settlement with Wooldridge.  The coverage afforded Palmer

18   Construction as an additional insured is restricted to defense of and liability for bodily injury

19   claims arising out of alleged or actual negligent acts or omission of the Assured A.R.M.  It is the

20   settlement agreement between Underwriters' insured A.R.M. and Wooldridge that Underwriters

21   claims eliminates the duty to defend Palmer Construction.   Underwriters asserts that the

22   settlement eliminated/resolved the claimed negligence of A.R.M. and thus, the remaining claims

23

24

1  against Palmer Construction cannot arise out of the alleged negligent acts or omissions of

2  A.R.M.

3          This argument is not persuasive.  Underwriters cannot dispute that Palmer Construction

4  was not a party to this settlement and that during the course of the negotiations of this settlement,

5  Palmer Construction was an additional insured of Underwriters.  The Additional Insured

6  Endorsement does not require that A.R.M. be the subject of a lawsuit or otherwise be held liable

7  for its own negligence.  Rather, Palmer construction is covered under the endorsement "for

8  claims arising out of alleged or actual negligent acts or omissions" of A.R.M.  Thus, even if

9  A.R.M. is no longer a party to the underlying action,  and even if found not to have been

10  negligent, it remains possible that the claims against Palmer Construction arise out of the alleged

11  negligence of A.R.M.  The phrase "arising out of" is unambiguous and has a broader meaning

12  than "caused by" or "resulted from." It ordinarily means "originating from," "having its origin

13  in," "growing out of," or "flowing from." *Munn v. Mut. of Enumclaw Ins. Co*., 73 Wn.App. 321,

14  325 (1994).  "Arising out of" does not mean "proximately caused by" but requires a mere

15  "causal connection." *Australia Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn.App. 758, 773-

16  74 (2008).

17          It is well settled Washington law that both a general contractor and a subcontractor are

18  responsible to ensure compliance with safety regulations within their areas of control. The

19  general contractor and a subcontractor each owe distinct duties to workers with respect to

20  workplace safety.  *Gilbert H. Moen Co. v. Island Steel Erectors, Inc*., 128 Wn.2d 745, 756

21  (1996).  Although the duties owed by the general contractor and subcontractor to workers for

22  workplace safety are distinct, they are concurrent responsibilities to workers.  Although there

23  may be independent negligence, that should not equated with "sole negligence." *Id*. at 757.  The

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 10

1    duty to observe safety standards is a shared duty.  *Id.*; *Stute v. P.B.M.C., Inc*., 114 Wn.2d 454,

2    464 (1990).

3         Here, regardless of the release and settlement, the underlying complaint alleges claims

4    against Palmer Construction that may have a causal connection to the alleged negligence of

5    A.R.M.  Both the subcontractor and general contractor may be concurrently negligent.  Indeed,

6    the Release and Settlement Agreement recognizes the possibility that Palmer Construction may

7    be subject to liability in the underlying action based upon an allocation of fault arising from an

8    act or omission of A.R.M.  Underwriters has not established the lack of a causal connection

9    between alleged negligence of A.R.M. and the claims against Palmer Construction.  The motion

10   for summary judgment should be denied.

11        It also appears that there are issues of fact that Underwriters may have breached a duty to

12   its insured Palmer Construction by placing its own interests ahead of that of its insured.  See

13   *Ledcor Industries (USA), Inc. v. Mutual of Enumclaw Ins. Co*., 150 Wn.App. 1, 9 (2009).

14   Washington law favors a judicial determination of the duty to defend.  Here, Underwriters

15   unilaterally terminated its defense of its insured.  Through its own acts of negotiating a

16   settlement on behalf of its insured A.R.M. to the detriment of its additional insured Palmer

17   Construction, Underwriters may have placed its own interests ahead of the interests of its

18   insured, Palmer Construction.

19        There also remain unresolved issues regarding the duty to indemnify.  It is unknown

20   whether Palmer Construction settled the underlying action in part for claims arising out of the

21   alleged negligence of A.R.M.  Indeed the record is silent as to risks to Palmer Construction that

22   led to a much more substantial settlement with Wooldridge than that obtained by A.R.M.

23        It is not clear from the record that Underwriters is entitled to the dismissal it seeks.

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 11

1

**CONCLUSION**

2          For the foregoing reasons, Defendant Underwriters is not entitled to summary judgment.

3 Therefore, it is hereby **ORDERED**:

4          Defendant Certain Underwriters at Lloyd's London' Motion for Summary Judgment

5 (Dkt. 10) is **DENIED.**

6          Dated this 24th day of June, 2013.

7

8

ROBERT J. BRYAN
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 12